**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN ALEXANDER PRADA PALENCIA, | : | Civil No. 1:26-CV-01059 |
| | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN, PIKE COUNTY CORRECTIONAL FACILITY, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner John Alexander Prada Palencia ("Prada Palencia"). (Doc. 1.)  Prada Palencia argues that he is being wrongfully detained without a bond hearing under 8 U.S.C. § 1225(b) and, instead, should be immediately released or given an appropriate bond hearing pursuant to 8 U.S.C. § 1226.  For the reasons that follow, the court will grant Prada Palencia's petition and order his immediate release.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Prada Palencia is a native and citizen of Venezuela.  (Doc. 1-1, p. 4.)[1]  On May 12, 2023, he was detained by United States Border Patrol after unlawfully entering the United States near Rio Grande Valley, Texas.  (Doc. 8-1, p. 4.)  Prada

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

Palencia voluntarily returned to Mexico.  (*Id.*)  On July 7, 2023, Prada Palencia arrived at the Brownsville, Texas port of entry without proper documentation.  (*Id.*) He was placed in removal proceedings, issued a notice to appear charging him under the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), and was released into the United States pending a hearing before an immigration judge. (*Id.*)  On October 23, 2023, Prada Palencia applied for employment authorization with the United States, and received approval on February 20, 2025, with a valid through date of February 19, 2030.  (*Id.*)

On March 5, 2026, Prada Palencia was arrested pursuant to a Form I-200 arrest warrant during a targeted immigration enforcement operation in New Jersey. (*Id.*)  According to Respondents, Prada Palencia had an immigration hearing on May 13, 2026, and was ordered removed.  (Doc. 8, p. 6.)  He is currently detained at Pike County Correctional Facility.  (Doc. 1, p. 2.)

On April 23, 2026, Prada Palencia filed a petition for writ of habeas corpus requesting release from detention against Warden, Pike County Correctional Facility; United States Attorney, Middle District of Pennsylvania; U.S. Immigration and Customs Enforcement; and Enforcement and Removal Operations (collectively, "Respondents").  (Doc. 1.)  Respondents filed a response on May 18, 2026, and Prada Palencia did not file a traverse.  (Doc. 8.)  Thus, this petition is ripe for review.

## STANDARD OF REVIEW AND JURISDICTION[2]

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."  Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted).  Prada Palencia is detained at Pike County Correctional Facility, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## DISCUSSION

In his *pro se* petition, Prada Palencia argues that he was improperly detained under Section 1225(b) of the INA, which relates to applicants for admission. (Docs. 1, 1-1.)  Prada Palencia submits that he should not have been detained because he is not an applicant for admission.  (Docs. 1, 1-1.)  Prada Palencia

---

[2] Unlike prior habeas petitions before this court that presented similar issues, Respondents do not argue that the court lacks subject matter jurisdiction in this case, thus, the court will not address that issue here.  (*See* Doc. 9.)

requests that the court order his immediate release under appropriate conditions. (Doc. 1-1, p. 14.)

Respondents submit that Prada Palencia is detained pursuant to Section 1225(b)(2)(A).  (Doc. 8, p. 16.)  They assert that Prada Palencia falls within the statutory definition of "applicant for admission," he is properly detained under Section 1225(b)(2), and Section 1226(a) is inapplicable to him.  (*Id.* at 16–41.) Respondents submit that the plain language of Section 1225(b)(2) requires detention of applicants for admission and that the section's reference to noncitizens "seeking admission" does not narrow the scope of Section 1225(b)(2).  (*Id.* at 17– 32.)  They further argue that their interpretation of Section 1225(b)(2)(A) does not make Section 1226(a)'s discretionary detention authority superfluous and *Jennings* does not undermine Respondents' interpretation.  (*Id.* at 32–41.)  Respondents also assert that Prada Palencia's temporary detention does not violate due process.  (*Id.* at 41–45.)  Alternatively, if the court wishes to grant Prada Palencia's petition, Respondent requests that the court order a bond hearing rather than releasing Prada Palencia.  (*Id.* at 45.)

Section 1225 of the INA is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  8 U.S.C. § 1225.  It defines "applicant for admission" as "[a]n alien present in the United

4

States who has not been admitted or who arrives in the United States . . . ." *Id.*

§ 1225(a)(1).  Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Noncitizens subject to this mandatory detention may only be released while their removal proceedings are pending "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288.  The BIA recently decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that noncitizens who enter the United States without admission are subject to mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
> > (1) may continue to detain the arrested alien; and
> > (2) may release the alien on—
> > > (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > > (b) conditional parole; but
> > (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent

residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Prada Palencia is detained pursuant to Section 1225(b)(2)(A) and neither party alleges that Prada Palencia is subject to Section 1226(c).[3] (*See* Docs. 1, 8.)

The Second, Sixth, and Eleventh Circuit Courts of Appeals and federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Prada Palencia, a noncitizen who previously entered and had been living in the United States prior to his detention.[4] *See, e.g.*, *Cunha v. Freden*, 175 F.4th 61 (2d Cir. Apr. 28, 2026) (holding that petitioner's "detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, --- F 4th ---- (6th Cir. May 11, 2026) (same); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, __ F.4th __, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026) (same); *Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section 1225(b) was inapplicable to petitioner);

---

[3] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section. 8 U.S.C. § 1226(c).

[4] The court acknowledges that there are some district courts, as well as the Fifth and Eighth Circuit Courts of Appeals, who have agreed with Respondents' interpretation of Section 1225. (*See* Doc. 8, p. 2–3.) *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). However, none of these decisions are binding on this court.

*Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same).  "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225."  *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

The court is persuaded by and agrees with the Second, Sixth, and Eleventh Circuit Courts of Appeals and the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A).  Prada Palencia's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States."  *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025).  Thus, this section simply does not apply to someone like Prada Palencia, who has been residing in the

7

United States for approximately three years. *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the plain meaning of the statutory text. *Bethancourt Soto*, 807 F. Supp. at 406 (finding that respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5 (citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same). If Section 1225(b)(2)(A) applied to every "applicant for admission," the phrase "seeking admission" would become unnecessary and surplusage.[5] *Bethancourt Soto*, 807 F. Supp. 3d at 406–07 (citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute should have meaning" and "no clause, sentence, or word shall be superfluous, void, or insignificant"). Further, "seeking admission" connotes "some affirmative,

---

[5] *Bethancourt Soto*, 807 F. Supp. 3d at 407, provides a helpful example of why Respondents' interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599 U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

present-tense action" such that it "requires an act currently underway not a static condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[6]

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Prada Palencia is not currently "seeking admission" to the United States. That was his status in 2023. Therefore, Section 1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to the United States.

---

[6] Again, the examples provided by the court in *Bethancourt Soto*, 807 F. Supp. 3d at 406–07, are illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point— one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

Addressing Prada Palencia's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).  Thus, the court must determine what process is due to Prada Palencia, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

The first factor weighs heavily in Prada Palencia's favor because the "official action" has deprived him of his physical liberty.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government.").  The second factor similarly swings in Prada Palencia's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without

10

an opportunity for a bond hearing." *Bethancourt Soto*, 807 F. Supp. 3d at 409

(emphasis in original).  As to the third factor, the court recognizes Respondents'

interest in detaining noncitizens to ensure "the appearance of aliens at future

immigration proceedings" and "preventing danger to the community."  *Zadvydas*,

533 U.S. at 690.  Still, this factor weighs in favor of Prada Palencia because

Respondents do not contend that he poses a danger to the community or that he is a

flight risk.  Accordingly, the *Mathews* factors weigh in Prada Palencia's favor and

the court finds that his mandatory detention without a bond hearing under Section

1225(b)(2)(A) violates his procedural due process rights.  *See Bethencourt Soto*,

2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews* factors

weigh decisively in Petitioner's favor, and as such his mandatory detention under

§ 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted);

*Patel*, 2025 WL 3516865 at *6 (holding same).  Thus, the court will grant Prada

Palencia's petition and release him on his own recognizance as a government

official did in July 2023.

11

## CONCLUSION

For these reasons, the court will grant Prada Palencia's petition for writ of

habeas corpus and order his immediate release.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 5, 2026

12